IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RUSSELL HOLLIDAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-1060-MJR-SCW |
| | ) |
| DONALD JASON RAMERT, DAN HILL, | ) |
| TIM LAY, and PAUL KILQUIST, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**REAGAN, Chief Judge:**

This matter is before the Court on three summary judgment motions. Individual summary motions have been filed by Defendant Donald Jason Ramert (Doc. 62), Dan Hill (Doc. 65) and Tim Lay (Doc. 67). Plaintiff has filed a Response (Doc. 70) to all three motions. Based on the following, the Court **DENIES** Defendant Ramert's motion for summary judgment (**Doc. 62**), but **GRANTS** the motions filed by Hill (**Doc. 65**) and Lay (**Doc. 67**).

### SUMMARY JUDGMENT STANDARD

Summary judgment—which is governed by Federal Rule of Procedure 56—is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56). The party seeking summary judgment bears the

initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Serednyj v. Beverly Healthcare, LLC*, 656 F.3d 540, 547 (7th Cir. 2011) ("When a summary judgment motion is submitted and supported by evidence . . . the nonmoving party may not rest on mere allegations or denials in its pleadings"). A mere scintilla of evidence supporting the non-movant's position is insufficient to overcome summary judgment; a non-movant will prevail only when it presents definite, competent evidence to rebut the motion. *Estate of Escobedo v. Martin*, 702 F.3d 388, 403 (7th Cir. 2012); *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). Summary judgment is only appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Carlisle v. Deere & Co.*, 576 F.3d 649, 653 (7th Cir. 2009).

The Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter, but rather to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-movant—here, Plaintiff. *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009).

### BACKGROUND

Plaintiff filed his Amended Complaint on February 4, 2013, alleging that Defendant Ramert used excessive force against him during an arrest on November 14, 2011, and, further, that Defendants Hill and Lay failed to intervene (Doc. 27). Plaintiff alleged that Defendant Ramert used a police dog—"Kodiak"—to attack Plaintiff when he was not resisting arrest, and that injury was caused to his neck and back (Doc. 27 at ¶¶ 12-15).[1] He also alleges that this use of force constituted an assault and battery. The following facts are derived from the parties' briefs and exhibits.

On November 14, 2011, Plaintiff was a suspect in the robbery of a Circle K gas station in Belleville, Illinois. (Doc. 66-1 at p. 10). Plaintiff and his accomplice, Jason Mitchell, fled the scene in a 1991 red Ford Ranger. (*Id.* at p. 11). Plaintiff was the passenger in that vehicle. (*Id.*). The Circle K clerk called the police and advised them of the robbery, and that the suspects had used a weapon. (*Id.* at p. 14). Police officers, including Defendant Lay, chased the Ford into a field, where Plaintiff and Mitchell exited the vehicle and ran on foot. (Doc. 66-1 at p. 15, 107; Doc. 67-2 at ¶ 3). Mitchell was caught by Defendant Lay. (Doc. 67-2 at ¶ 4). Plaintiff proceeded to a mobile home and hid underneath it by entering one of two holes in the home's under-skirting. (Doc. 66-1 at p. 15).

Defendant Donald Jason Ramert, a canine officer with the Illinois State Police

---

[1] While Plaintiff's original Complaint alleged that all three individuals used excessive force in deploying Kodiak, Plaintiff's Amended Complaint clarified that Hill and Lay only failed to intervene in Ramert's use of Kodiak against Plaintiff (See Doc. 26 at p. 2).

("ISP"), was advised by the ISP's emergency radio that two male subjects had robbed a convenience store in Belleville, and that the subjects were armed. (Doc. 63-1 at ¶¶ 7-8). Defendant Hill, a St. Clair County Sheriff's Deputy, received the same call. (Doc. 66-2 at ¶ 7). Ramert took Kodiak with him to a state park area in Collinsville, Illinois, where officers from various departments were trying to locate Plaintiff. (Doc. 63-1 at ¶¶ 10-12). Upon arriving, Ramert was informed by Defendant Lay that Mitchell was in custody, but that a weapon had not yet been located. (*Id.* at ¶¶ 13-14). Lay informed both Ramert and Hill that a second suspect—Plaintiff—had run northwards. (*Id.* at ¶ 16).

Approximately eleven police officers, including all three defendants, began searching the area for Plaintiff. (Doc. 67-2 at ¶ 5; Doc. 66-2 at ¶16). Defendant Ramert deployed Kodiak for a criminal track, but Kodiak was unable to locate a track. Ramert then deployed Kodiak on a fifteen foot lead and, with two other officers as cover, searched the area around 3200 West Point, Collinsville twice. (Doc. 63-1 at ¶¶ 18-20). During a search, Defendant Hill observed a person hiding under a mobile trailer at 3200 West Point. (Doc. 66-2 at 17-18). Hill notified other officers, and officers were radioed for assistance (Doc. 66-2 at ¶ 19; Doc. 67-2 at ¶ 6; Doc. 63-1 at ¶ 23).

Officers met at the mobile home in order to retrieve Plaintiff. Defendant Ramert arrived and took Kodiak to the east side of the home, where there was a sizeable hole in the skirting. (Doc. 63-1 at ¶ 25). Defendant Hill proceeded to the street south of the mobile home and stood in the street with Captain John Moody of

Belleville, Illinois. (Doc. 66-2 at ¶ 21). Lay, with weapon drawn, took position behind Ramert. (Doc. 67-2 at ¶ 11). At least two other officers were also present near the home with their weapons drawn (*Id.* at ¶ 9).

Standing at the hole on the east end of the home, Defendant Ramert announced "State Police K-9, surrender now or a dog will be used to search the area. If my dog finds you, he will bite you." (Doc. 63-1 at ¶ 27; Doc. 66-2 at ¶¶ 24, 26). According to Ramert and Hill, there was no response from underneath the trailer. (Doc. 63-1 at ¶ 28; Doc. 66-2 at ¶ 27). Defendant Ramert deployed Kodiak to search the area, but he came out quickly, meeting resistance with objects under the trailer. (Doc. 63-1 at ¶¶ 30-31). Ramert then took Kodiak to a hole on the south side of the trailer and deployed him again. (*Id.* at ¶ 32; Doc. 67-2 at ¶ 12). Defendant Hill, due to his location, did not see the canine being sent under the trailer, nor did he hear any commands from his location (Doc. 66-2 at ¶¶ 29-33). Defendant Lay witnessed Kodiak being sent under the trailer, but did not know the verbal commands of the canine. (Doc. 67-2 at ¶ 14).

After being sent under the trailer, Kodiak ran to the east side of the trailer and turned his head, a signal he had found someone and apprehended the individual. (Doc. 63-1 at ¶ 33). Defendant Ramert pulled skirting off from the east side of the mobile home and noted that Kodiak had apprehended Plaintiff by his left calf. (*Id.* at ¶ 35). Ramert ordered Plaintiff to surrender, but he continued to hide beneath the home. (*Id.* at ¶ 36). Ramert ordered Plaintiff to show his hands but he did not comply and instead struggled with the canine. (*Id.* at ¶¶ 36-38). Defendant Lay

also indicated that Plaintiff did not show his hands and refused to come out. (Doc. 67-2 at ¶ 15). He ordered Plaintiff again to show his hands but Plaintiff stated that he could not. (Doc. 63-1 at ¶ 39). Ramert moved to the west side of the trailer to observe Plaintiff but could not see his right hand or whether or not he had a weapon. (*Id.* at ¶¶ 40-41). According to Ramert, he did not order Kodiak to cease his encounter with Plaintiff because he believed Plaintiff might still have a weapon that he could use on the officers. (*Id.* at ¶ 43). He again ordered Plaintiff to crawl out from underneath the trailer and Plaintiff complied (*Id.* at ¶¶ 44-45). Once Plaintiff complied, Defendant Ramert commanded Kodiak to release (*Id* at ¶ 45). Plaintiff was taken into custody.

Plaintiff's story is different. He testified that, once the police discovered him under the trailer, three officers had him by gunpoint (Doc. 67-3 at p. 39). He believes that his foot may not have been fully under the trailer when police located him and his head was positioned where he could see out. (*Id.* at pp. 41-43). The officer instructed him: "Let me see your hands. Don't move." (*Id.* at p. 43). At the time Plaintiff was laying on the ground with his hands in the open, where they could be seen. (*Id.* at p. 44). He first saw Kodiak come in through a different portion of the trailer and then go back out of the trailer (*Id.* at p. 39). He heard Defendant Ramert say something (possibly "I'm Ramert with the state police"), but he could hardly hear him. (*Id.*). He then heard an officer say "I've located him." (*Id.*). He saw Ramert turn his dog loose and give a command to attack. (*Id.* at p. 43).

Plaintiff testified that the incident happened very fast—too fast to respond to

the officer. He felt that the officers said not to move and to show them his hands, and that he did—but Ramert immediately let Kodiak loose and ordered "Attack." (*Id.*). The canine bit Plaintiff's back, then grabbed his leg and pulled him out from underneath the trailer. (*Id.* at pp. 44-45). Plaintiff testified that, at the time, Ramert gave the order he was not resisting and was following officers' commands not to move and to show his hands (*Id.* at p. 44).

## ANALYSIS

Plaintiff alleges that Defendant Ramert used excessive force (to which Defendants Lay and Hill acted indifferently) when he commanded his canine partner, Kodiak, to attack Plaintiff, even though Plaintiff was not resisting arrest.[2]

Claims that an officer used excessive force in the course of an arrest are governed by the Fourth Amendment's reasonableness standard. *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2006) (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). In evaluating the reasonableness of the force the operative question "is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an 'objectively reasonable' manner." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010). The Court considers three factors in determining the reasonableness of the officer's actions:

---

[2] Plaintiff alleges for the first time in his responsive brief (Doc. 70) that after he was pulled from the trailer police officers kicked and kneed him in the back of his head. Plaintiff did not allege these acts in his initial Complaints (Docs. 1 and 27), nor has he asked the Court to amend his Complaint to add this new claim of excessive force. Thus, the Court will not consider his claims regarding physical attacks from the officers.

>(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of officers or others; and (3) whether the suspect is actively resisting arrest by flight.

*Id.* (citing *Graham*, 490 U.S. at 396). *See also Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir. 2011) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000)). Other factors to consider are whether the individual was under arrest or a suspect in a crime, whether the individual was armed, and whether the individual was attempting to interfere with an officer's duties. *Padula,* 656 F.3d at 602. "In the end, the excessive force inquiry looks to whether the force used to seize the suspect was excessive in relation to the danger he posed—to the community or to the arresting officers—if left unattended." *Id.* (quoting *Jacobs,* 215 F.3d at 773).

1. *Defendant Ramert: No Qualified Immunity on Federal Claims*

Defendant Ramert argues that he is entitled to summary judgment on Plaintiff's excessive force claim under the doctrine of qualified immunity. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their

official capacities. *Harlow*, 457 U.S. at 816; *Denius*, 209 F.3d at 950.

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson,* 555 U.S. at 232; *Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). While it is often beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, 555 U.S. at 236.

Here, Defendant Ramert is not entitled to summary judgment on the basis of qualified because there are still issues of fact as to whether his actions constituted a violation of Plaintiff's clearly established constitutional rights. *See Lewis v Downey*, 581 F.3d 467, 478 (7th Cir. 2009). There is a dispute as to whether the force Defendant Ramert employed by having Kodiak attack Plaintiff was excessive in light of the circumstances. Defendant Ramert argues that it was not excessive because he sought to apprehend Plaintiff, since Plaintiff continued to hide and refused to obey orders to show his hands. Defendant also argues that at the time he deployed his canine partner, there was evidence that Plaintiff had committed a crime, he had evaded police both by vehicle and foot, and Ramert had been informed that a weapon had been used in the convenience store robbery (for which Plaintiff was a suspect) had not been located. However, Plaintiff testified that, at the time Ramert deployed Kodiak, Plaintiff had already surrendered and was not resisting

arrest. Plaintiff testified that he was in view of at least three officers who had him surrounded and held at gunpoint. He also testified that he had his hands out in the open where they could be seen and was lying on his stomach. While Plaintiff did not come out from beneath the trailer, Plaintiff testified that this was because he had been ordered not to move and to show his hands—instructions which he was following. Thus, according to Plaintiff's testimony, at the time Ramert deployed Kodiak, he was not resisting and no force was necessary.

Defendant Ramert points to a number of cases which he argues are similar to the facts in this case. *See Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009); *Miller v. Clark County*, 340 F.3d 959, 964-65 (7th Cir. 2003); *Strickland v. Shotts*, 408 F.Supp. 2d 633, 635-36 (N.D. Ind. 2004); *Tilson v. City of Elkart, Ind.*, 96 F. App'x. 413, 417–18 (7th Cir. 2004). The deployment and use of a canine did not constitute excessive force in those cases. However, in those cases, the civil rights plaintiff had either failed to comply with an officer's orders or failed to surrender at the time the canine was deployed. In *Miller*, for instance, the plaintiff was hiding in the woods after defying orders to stop, was not in the sights of the officers, and knew the terrain, making officers afraid of a possible ambush. *Miller*, 340 F.3d at 964-65. In other cases, the individuals were resisting arrest. *See Tilson*, 96 F. App'x. at 417–18 (canine bit plaintiff and held him after the plaintiff continued to run and ignore police orders to stop); *Johnson*, 576 F.3d at 660 (officer did not have to accept plaintiff's surrender when he had only just recently stopped running because he was cornered).

Here, however, Plaintiff testified that he was not resisting arrest and that he was lying on his stomach with his hands out, in compliance with the officer's orders. Unlike *Miller*, Plaintiff testified the officers could see Plaintiff and see that he was prone on the ground. Thus, there is evidence in this case that Plaintiff had surrendered and that no further force was needed. It is well settled that an officer may not continue to use force once a suspect has been subdued and complies with an officer's orders. *Johnson*, 576 F.3d at 660 (citing *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001)). Thus, if the jury believes that Plaintiff had surrendered and was not resisting, they could find that Defendant Ramert improperly applied force. Thus, Defendant is not entitled to qualified immunity (or summary judgment), as there are issues of fact material to Plaintiff's excessive force claim. *See Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) ("If there are genuine issues of fact concerning [an element of the claim], a defendant may not avoid trial on the grounds of qualified immunity.").

2. *Defendant Ramert: No Immunity on State Claims*

Plaintiff's Amended Complaint also alleges that Ramert's use of force constituted a state law assault and battery. Defendant Ramert argues that he is entitled to both sovereign immunity and public official immunity on the state claim.

Defendant Ramert argues that he is entitled to sovereign immunity because he was acting with a purpose related to his employment and the claim arises out of his normal and usual functions, thus making the claim one against the state. In order to determine whether a claim against a state employee is actually one against

the state, and thus barred by sovereign immunity, the Court must look at whether "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters originally within the employee's normal and official functions of the State." *Healy v. Vaupel*, 133 Ill.2d 295, 309, 549 N.E.2d 1240, 1247 (1990) (quoting *Robb v. Sutton*, 147 Ill.App.3d 710, 716 (1986)).

Courts have consistently rejected the contention that an assault and battery allegedly committed by an officer is within the scope of his authority so as to invoke sovereign immunity. *See Cruz v. Cross*, Case No. 08-cv-4873, 2010 WL 3655992 (N.D. Ill. Sept. 10, 2010); *Handy v. Evens*, Case No. 13 C 8795, 2014 WL 7012572 (N.D. Ill. Dec. 11, 2014). Such courts have found that a claim of assault and battery, by its definition, does not meet the first prong of the sovereign immunity test. Battery is the unauthorized touching of another person. *Luss v. Vill. of Forest Park*, 377 Ill.App.3d 318, 333, 878 N.E.2d 1193, 1206 (2007). Assault is a reasonable apprehension of an imminent battery. *Rosenberg v. Packerland Packing Co.*, 55 Ill.App.3d 959, 963, 370 N.E.2d 1235, 1238 (1977). Commission of such intentional torts would exceed an officer's authority given to him by the State, since no employee has the authority to commit a battery. *Handy*, 2014 WL 7012572, at * 2. Simply put, the use of excessive force by an officer is not within the scope of his authority. *See Hudson v. McMillian*, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). By

alleging that Defendant Ramert committed an assault and battery, Plaintiff is not alleging that the battery was some function within the scope of his authority. *Handy*, 2014 WL 7012572, at * 2 (citing *Jackson v. Alverez*, 358 Ill.App.3d 555, 560, 831 N.E.2d 1159, 1164 (2005)).

Further, based on the nature of the claims "claims for assault and battery can be described as involving a duty not to threaten or engage in unauthorized touching of another person." *Cruz*, 2010 WL 3655992, at * 4. Such a duty is one owed by all people to all members of the public and thus does not arise by employment with the State. *Id. See also Handy*, 2014 WL 7012572, at * 2. While it is debatable as to whether the use of force here was a normal function of a police officer's job (thus meeting the third prong, *see Cruz*, 2010 WL 3655992, at * 4 (use of force to restore order and discipline within correctional officer's normal functions); *Handy*, 2014 WL 7012572, at *2 (kicking and beating a prisoner without cause not within correctional officer's normal functions)), the other two prongs of the test are not met. Accordingly, Plaintiff's assault and battery claim against Defendant Ramert is not barred by sovereign immunity.

Defendant Ramert also argues that he is protected under the public official immunity doctrine. "[P]ublic official immunity is a common law defense to liability for employees of the State of Illinois where those employees engage in discretionary functions." *Mich. Ave. Nat'l Bank v. Cnty. of Cook*, 191 Ill.2d 493, 732 N.E2d 528, 544 (2000). The immunity applies only to conduct that is discretionary and that are within the scope of or unique to the official's authority. *Currie v. Lao*, 148 Ill.2d 151,

592 N.E.2d 977, 984 (1992); *Janes v. Albergo*, 254 Ill.App.3d 951, 626 N.E.2d 1127, 1131 (1st Dist. 1993); *Midamerica Trust Co. v. Moffatt*, 158 Ill.App.3d 372, 511 N.E.2d 964, 967 (5th Dist. 1987). However, if an official commits a wrongful act or acts maliciously he is not entitled to the immunity. *Moffatt,* 159 Ill.App.3d 372, 511 N.E.2d at 969.

Here, Plaintiff's claim is not barred by public official immunity because there are issues of fact as to whether Defendant Ramert was acting within the scope of his employment when he deployed Kodiak. While Defendant points out that law enforcement officers attempting to apprehend an escaped criminal is a uniquely governmental function, *see Campbell v. White*, 207 Ill.App.3d 541, 566 N.E.2d 47, 55 (4th Dist. 1991), the case cited by Defendant applies to officers engaged in a high speed chase in a car—not (as here) where a Plaintiff swears he had surrendered, was lying prone, and was attacked. Accordingly, the Court **DENIES** Defendant Ramert's motion for summary judgment

### 3. *Plaintiff's Failure to Protect Claims—Summary Judgment Granted to Hill & Lay*

Plaintiff's Amended Complaint also alleges that Defendants Hill and Lay are liable because they failed to intervene in order to stop the purportedly excessive force.

An officer can be liable for both his own use of excessive force against an individual and his failure "to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers." *Sanchez v. City of Chicago*, 700 F.3d 919,

926 (7th Cir. 2012). Such an officer can be held liable if: (1) he "had reason to know that a fellow officer was using excessive force or committing a constitutional violation; and (2) [he] had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001)). An officer has a "realistic opportunity to intervene" when he could have called for back-up, called for help, or cautioned the officer using excessive force to stop. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). Whether an officer had time to intervene or was capable of preventing the harm is usually an issue of fact for the jury unless "a reasonable jury could not possibly conclude otherwise." *Id.* (quoting *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)).

### A.    Defendant Hill

Defendant Hill is entitled to summary judgment on Plaintiff's failure to intervene claim. There is no evidence that Defendant Hill was in a location where he had a realistic opportunity to stop Ramert's deployment of Kodiak. Defendant Hill stated in his affidavit that he located Plaintiff hiding under the mobile trailer at 3200 West Point, but when other officers arrived he proceeded out to the street with Captain John Moody of Belleville (Doc. 66-2 at ¶ 19-21). Defendant Hill stated that he was not near Defendant Ramert (or the other officers) and could not see Kodiak or hear any of the commands Ramert gave him from Hill's location. (Doc. 66-2 at ¶¶ 28-29). Hill stated he was over thirty to fifty feet away from the trailer when the officers ordered Plaintiff out from under the trailer. (*Id.* at ¶ 24).

Plaintiff's deposition testimony further supports Hill's statement. Plaintiff testified that while he was under the trailer and attacked by Kodiak, three officers also held him at gunpoint. (Doc. 67-3 at pp. 39, 43-45; Doc. 70 at ¶ 9). Plaintiff testified that these officers who had him at gunpoint were white (Doc. 66-1 at p.136). However, Defendant Hill is African American, (Doc. 66-2 at ¶ 1), and there is no evidence from Plaintiff that any of the officers in the vicinity of the trailer were African American. Plaintiff testified adamantly that they were all white (Doc. 66-1 at p. 136). Thus, the Court finds no evidence to suggest that Hill was in a location where he could intervene because he was some distance away from the trailer, could not see Kodiak, and could not hear Defendant Ramert's commands to the canine. The Court accordingly finds that Hill is entitled to summary judgment on Plaintiff's failure to intervene claim.

### 3. Defendant Lay

The Court likewise finds that Defendant Lay is entitled to summary judgment on Plaintiff's failure to intervene claim. While Defendant Lay was closer to Defendant Ramert (and Plaintiff) when Defendant Ramert deployed Kodiak, there is simply evidence that Defendant Lay had a reasonable opportunity to intervene. Defendant Lay indisputably testified he was not a canine officer and could not stop the canine himself, as he did not know the verbal commands. (Doc. 67-2 at ¶¶ 14-15). Further, Plaintiff testified that the canine immediately attacked after Ramert gave the order, and that within three second the canine had grabbed Plaintiff. (Doc. 67-3 at pp. 43, 131–32). Lay testified that he was over twenty to

twenty-five feet away from Ramert when Kodiak was deployed. (Doc. 67-2 at ¶¶ 11-13). Thus there is no evidence that Lay was in a position to intervene when the canine was released. Accordingly, the Court also finds that Defendant Lay is entitled to summary judgment.

### DEFAULT JUDGMENT AGAINST DEFENDANT KILQUIST

One more matter remains pending, and must be disposed of before this case (which is set for a jury trial next month) proceeds. Plaintiff procured a Clerk's Entry of Default as to Defendant Paul Kilquist, who (like Lay and Hill) is alleged to have failed to intervene on Plaintiff's behalf. Indicating that he has sent the motion to Kilquist's last known address, Plaintiff now moves for default judgment.

Motions for default judgment are governed by Federal Rule of Civil Procedure 55(b), which has two subsections. The first addresses cases where the damages are a sum certain or a sum that can be made certain by computation. The second address cases where—like here—damages are not so easily assessed. *See* **Fed. R. Civ. P. 55(b)(2).** The latter subsection permits a court to make referrals to determine the amount of damages. **Fed. R. Civ. P. 55(b)(2)(B).**

After careful consideration of the motion and the record in this case, it appears that Defendant Kilquist has failed to plead or otherwise defend in this action, and that the Clerk has entered a default against Kilquist. Accordingly, the Court GRANTS the motion for default judgment (**Doc. 92**) and **REFERS** the matter of damages to Magistrate Judge Stephen C. Williams for a Report and Recommendation.

The case remains set for a final pretrial conference next Monday, December 29, 2014, and for trial on January 12, 2015. The parties should be aware that four criminal trials—which take precedent over this case due to constitutional and statutory / Speedy Trial concerns—are scheduled on the current trial date. The undersigned of course remains unaware of any party's consent (or non-consent) to the jurisdiction of the magistrate judge for trial, but notes that the magistrate judge's more flexible calendar (due to the lack of felony criminal trials) often factors into parties in civil cases consenting. In this case, the consent of the remaining parties would possibly not suffice to trigger magistrate judge jurisdiction for trial. *See* **28 U.S.C. § 636(c)(1) (requiring "consent of the parties" to allow magistrate judge to conduct any or all proceedings in a jury or nonjury civil matter and enter judgment).**

That said, Plaintiff's damages against Defendant Kilquist (who is alleged to have failed to intervene on Plaintiff's behalf) would logically fail should a jury find that Defendant Ramert did *not* use excessive force on Plaintiff. And "if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved." *Douglas v. Metro Rental Servs.*, 827 F.2d 252, 255 (7th Cir. 1987) (applying and quoting *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986)).

Should the remaining parties both decide—for whatever reason—that consent to Magistrate Judge Williams is their preferred route, they should file a joint motion

to sever the claims against Kilquist from the claims against Ramert. Otherwise, the undersigned will remain unaware of any § 636(c) consent.

The matter of damages against Defendant Kilquist is hereby **STAYED** until the Plaintiff's claims against Ramert are resolved.

## CONCLUSION

For the reasons explained above, the Court **DENIES** (Doc. 62) Defendant Ramert's motion for summary judgment, but **GRANTS** the summary judgment motions filed by Defendants Hill (Doc. 65) and Lay (Doc. 67). The only claims remaining for trial are the excessive force claim and assault and battery claim against Defendant Ramert for deploying his canine partner on Plaintiff.

Plaintiff's motion for default judgment as to Defendant Kilquist (Doc. 92) is **GRANTED**, and the matter of damages against Kilquist is (1) **REFERRED** to Magistrate Judge Williams for a Report & Recommendation, but (2) **STAYED** pending resolution of Plaintiff's claims against Ramert. As discussed above, should the parties *jointly* agree that consent to Magistrate Judge Williams is preferable for a jury trial, they should note as such in a motion to sever the claims against Ramert from the claims against Kilquist.

**IT IS SO ORDERED**.
DATED: December 28, 2014.

                                                 s/ *Michael J. Reagan*
                                                 **Michael J. Reagan**
                                                 **CHIEF JUDGE**
                                                 **UNITED STATES DISTRICT COURT**